INDEPENDENCE COUNTY, ARKANSAS
CIRCUIT CLERK GREG WALLIS
FILED FOR RECORD BY
CARMEN DUNCAN D.C.

**DATE: JULY 22, 2019**

**TIME:  15:05:55**

## IN THE CIRCUIT COURT OF
## INDEPENDENCE COUNTY, ARKANSAS

**MARSHA MOFFIT, DENNIS BRADFORD**
**EMILY BUTLER, AND MARTIN DAVIS**                    **PLAINTIFFS**

v.                    CASE NO. 3₂CV-19-161

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY**                    **DEFENDANT**

---

### CLASS ACTION COMPLAINT

---

### I. INTRODUCTION

1.      Marsha Moffitt, Dennis Bradford, Emily Butler, and Martin Davis ("Plaintiffs") insured their vehicles with State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiffs were each involved in accidents, and State Farm declared their vehicles a total loss. As it does with all its total loss claims, State Farm used an AudaExplore "Market-Driven Valuation" report ("AudaExplore Report") to determine what it would pay on Plaintiffs' claims. Based on the report, State Farm placed the actual cash value of Moffitt's vehicle at $3,729.00, Bradford's

vehicle at $8,912.00, Butler's vehicle at $14,273.00, and Davis' vehicle at $37,048.00. These amounts are less than the actual cash value of the vehicles and less than what was required to replace the vehicles with another of like kind and quality.

2.      State Farm's use of the AudaExplore Report to value total loss claims violates its contracts with its insureds and Arkansas law. State Farm is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law, State Farm uses the AudaExplore Report to cheat its policyholders and increase its profits. The AudaExplore Report systematically undervalues the insured's vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving State Farm millions of dollars each year at the expense of its insureds.

3.      Plaintiffs brings this suit on behalf of themselves and others similarly situated to recover the difference between the actual cash value of their vehicles and what they were paid, punitive damages, costs, and attorneys' fees. Plaintiffs also asks the Court to declare that the use of the

AudaExplore Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff Marsha Moffitt is a resident and citizen of Desha, Independence County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with State Farm Mutual Automobile Insurance Company.

5.     Plaintiff Dennis Bradford is a resident and citizen of Bryant, Saline County, Arkansas. At all times relevant to this Complaint, he had a motor vehicle insurance policy with State Farm Mutual Automobile Insurance Company.

6.     Plaintiff Emily Butler is a resident and citizen of West Memphis, Crittenden County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with State Farm Mutual Automobile Insurance Company.

7.     Plaintiff Martin Davis is a resident and citizen of Pine Bluff, Jefferson County, Arkansas. At all times relevant to this Complaint, he had a motor vehicle insurance policy with State Farm Mutual Automobile Insurance Company.

8.     Defendant State Farm Mutual Automobile Insurance Company is incorporated and has its principal place of business in Bloomington, Illinois. It is licensed to do business in Arkansas, and its registered agent for service is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

9.     This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

10.    Venue is proper in this Court because Moffitt resided in Independence County at the time of the events which gave rise to this cause of action, and her accident occurred in Independence County. Ark. Code Ann. § 16-60-101.

### III. FACTUAL ALLEGATIONS

11.    Moffitt was involved in a motor vehicle accident in September 2017, which resulted in substantial damage to her 2006 Dodge Caravan. Moffitt insured her vehicle with Defendant State Farm Mutual Automobile Insurance Company, and she filed a claim regarding her property damage. State Farm determined that the vehicle was a total loss.

12.    Bradford was involved in a motor vehicle accident in September 2017, which resulted in substantial damage to his 2011 Chevrolet Impala.

Bradford insured his vehicle with Defendant State Farm Mutual Automobile Insurance Company, and he filed a claim regarding his property damage. State Farm determined that the vehicle was a total loss.

13.     Butler was involved in a motor vehicle accident in March 2017, which resulted in substantial damage to her 2014 Chevrolet Cruze. Butler insured her vehicle with Defendant State Farm Mutual Automobile Insurance Company, and she filed a claim regarding her property damage. State Farm determined that the vehicle was a total loss.

14.     Davis was involved in a motor vehicle accident in December 2017, which resulted in substantial damage to his 2017 GMC Sierra. Davis insured his vehicle with Defendant State Farm Mutual Automobile Insurance Company, and he filed a claim regarding his property damage. State Farm determined that the vehicle was a total loss.

15.     Plaintiffs' insurance policies with State Farm contained a clause providing for the adjustment and settlement of total loss claims based on actual cash value. *See* Moffitt's State Farm Insurance Policy, Exhibit "A" at pp. 25–26. Upon information and belief, this is State Farm's standard automobile insurance policy issued to insureds in the state of Arkansas.

16.     Bradford, Butler, and Davis have been unable to locate a copy of their policies to attach to this Complaint, and State Farm did not respond to their request for a copy of their policies. Good cause exists for Bradford, Butler, and Davis not to attach a copy of their policies to this Complaint because State Farm has a copy of the policies, and Bradford, Butler, and Davis can obtain a copy in discovery. Further, upon information and belief, Bradford, Butler, and Davis' policies contain the same material terms and provisions as Moffitt's policy, which is attached as Exhibit "A."

17.     To adjust Plaintiffs' claims, State Farm used a report obtained from Solera, Inc. ("Solera"). Solera provides services to the collision and insurance claims industry, including the AudaExplore "Market-Driven Valuation" report. The AudaExplore Report is sold almost exclusively to insurance companies, and it is marketed as reducing the cost of total value settlements. Upon information and belief, State Farm uses the AudaExplore Report to calculate its offers of all total loss claims.

18.     State Farm presented the AudaExplore Report to Moffitt as representing the "actual cash value" of the vehicle, and, based on the AudaExplore Report, State Farm paid $3,729.00 in "actual cash value" to adjust Moffitt's claim. *See* Moffitt AudaExplore Report, attached as Exhibit

"B." The actual cash value – and the cost to replace the vehicle with one of like kind and quality – was higher.

19.     State Farm engaged in the same practice with the other Plaintiffs. For instance, State Farm presented the AudaExplore Report to Bradford as representing the "actual cash value" of his vehicle, and, based on the AudaExplore Report, State Farm paid $8,912.00 in "actual cash value" to adjust Bradford's claim. *See* Bradford AudaExplore Report, attached as Exhibit "C." The actual cash value – and the cost to replace the vehicle with one of like kind and quality – was higher.

20.     State Farm presented the AudaExplore Report to Butler as representing the "actual cash value" of her vehicle, and, based on the AudaExplore Report, State Farm paid $14,273.00 in "actual cash value" to adjust Butler's claim. *See* Butler AudaExplore Report, attached as Exhibit "D." The actual cash value – and the cost to replace the vehicle with one of like kind and quality – was higher.

21.     State Farm also presented the AudaExplore Report to Davis as representing the "actual cash value" of his vehicle, and, based on the AudaExplore Report, State Farm paid $37,048.00 in "actual cash value" to adjust Davis' claim. *See* Davis AudaExplore Report, attached as Exhibit "E.".

The actual cash value – and the cost to replace the vehicle with one of like kind and quality – was higher.

22.   The AudaExplore Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report.

23.   First, in Moffitt's case, none of the vehicles used in the AudaExplore Report to establish the value were located in Independence County, Arkansas. Only one was located in Arkansas. The AudaExplore Report bases its estimate on two vehicles listed for sale, one in Springdale, Arkansas (183 miles from Desha, Arkansas) and the other from Carbondale, Illinois (247 miles from Desha, Arkansas).

24.   Likewise, the AudaExplore Report presented to Davis was based on "comparable" vehicles located far away from Jefferson County, Arkansas. For instance, the AudaExplore Report includes in its estimate two vehicles for sale in Tulsa, Oklahoma, over 300 miles away from Pine Bluff, Arkansas.

25.   In each of Plaintiffs' AudaExplore Reports, the listed price of each "comparable" vehicle was automatically reduced by around 9% "to account for typical negotiation." The report does not explain the basis for this reduction, and it is not grounded in reality. But the result of this

reduction is to automatically reduce the amount paid on Plaintiffs' claims, and every other person whose total loss claim was valued using the AudaExplore Report.

26.     The AudaExplore Report also makes other adjustments for mileage, equipment, and condition, but the report does not explain how or why those adjustments are made.

27.     The effect of these adjustments is to reduce payment on the claim to an amount less than the actual cash value and far less than is required to purchase a replacement vehicle of like kind and quality.

28.     State Farm knows that the AudaExplore Report undervalues vehicles. Despite knowing that the AudaExplore Report undervalues vehicles, State Farm continues to use it to determine the amount to pay claimants.

29.     State Farm presented the AudaExplore Report as representing the actual cash value of their vehicles and Plaintiffs relied on State Farm's representation when adjusting their claims.

30.     Arkansas law requires that State Farm, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if

one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

31.    Solera, Inc., d/b/a AudaExplore Information Services, Inc. is not a qualified dealer or appraisal service located in Independence County, Saline County, Crittenden County, or Jefferson County, Arkansas. Neither Solera, Inc. nor AudaExplore Information Services, Inc. are registered with the Arkansas Secretary of State to do business in Arkansas, and neither maintain any offices in the state of Arkansas.

32.    State Farm did not provide documentation about why it needed to deviate from one of the two approved methods to adjust Plaintiffs' claims,

and there was nothing unique about Plaintiffs' vehicles that would justify deviating from the methods approved under Arkansas law.

33.   State Farm knows or should know that using the AudaExplore Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, State Farm uses the practices because it saves millions of dollars. State Farm can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the AudaExplore Report and the actual cash value of the vehicle.

### IV. CLASS ACTION ALLEGATIONS

34.   Plaintiffs incorporates by reference the preceding paragraphs as if they were fully set forth herein.

35.   Plaintiffs brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

36.   Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown but may be easily determined from records maintained by State Farm.

37.     There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a.      Whether State Farm has a practice of using the AudaExplore Report to determine actual cash value;

b.      Whether Regulation § 43, § 10 is incorporated into the terms of State Farm's automobile insurance policies;

c.      Whether State Farm's practices violated Regulation 43, § 10;

d.      Whether Solera, Inc., d/b/a AudaExplore Information Services, Inc. is a qualified dealer or appraiser in the local market area; and

e.      By what percentage does the AudaExplore Report systematically undervalue cars vis a vis their actual cash value.

38.     Plaintiffs' claims are typical of the putative class. Like all other putative class members, Plaintiffs each had a total loss automobile claim that was settled and adjusted using the AudaExplore Report.

39.   Plaintiffs will fairly and adequately protect the interest of the putative class. They have no conflicts with putative class members and have suffered the same injury as members of the putative class.

40.   Plaintiffs' counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

41.   The questions of law and fact common to Plaintiffs and members of the putative class predominate over any question affecting only individual class members. These common questions concerning State Farm's wrongdoing must be resolved for all class members.

42.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. State Farm engages in a common business practice of using the AudaExplore Report to adjust total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require State Farm to litigate its business practice on a class-wide basis. Moreover, class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claim standing alone, the aggregate value of the practice is substantial.

43.     Plaintiffs' class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the ADTPA – is an unconstitutional intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

44.     Plaintiffs incorporates by reference the preceding paragraphs as if they were fully set forth herein.

45.     Arkansas law requires that an insurer adjust total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no

comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

46.    State Farm adjusts total loss automobile claims by relying on the AudaExplore Report, even though Solera, Inc. d/b/a AudaExplore Information Services, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

47.    State Farm engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the AudaExplore Report to adjust Plaintiffs' total loss claims. State Farm also used the same unconscionable, false, or deceptive act or practice in using the AudaExplore Report to adjust all its total loss claims in Arkansas. *See* Ark. Code Ann. § 4-88-107(a)(10). *See also* Ark. Ins. R. 43, § 1 (expressly providing that violations of the Insurance Department's regulations regarding unfair claims settlement practices "constitute an unfair or deceptive act or practice in the business of insurance.").

48.    State Farm presented the AudaExplore Report as representing the actual cash value of their vehicles and Plaintiffs and putative class

members justifiably relied on State Farm's representation about the actual cash value of the vehicle.

49.     State Farm's conduct proximately caused damage to Plaintiffs and putative class members because they received less for their total loss claim that they should have. Plaintiffs and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

50.     State Farm knew or ought to have known that its conduct would result in injury to Plaintiffs and putative class members and it continued in such conduct in reckless disregard of the consequences. Specifically, State Farm knew that its use of the AudaExplore Report undervalued its insureds' vehicles, yet it continued to use the AudaExplore Report because it saved State Farm millions of dollars each year. As a result, Plaintiffs and putative class members are entitled to punitive damages.

51.     Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

52.     Plaintiffs incorporates by reference the preceding paragraphs as if they were fully set forth herein.

53.     State Farm falsely represented that the amount in the AudaExplore Report represented the actual cash value of Plaintiffs' automobiles. State Farm made the same false representation to every other putative class member.

54.     State Farm knew that its representation was false. First, State Farm knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the AudaExplore Report was not a permissible method. Further, State Farm knew that the AudaExplore Report systematically generated valuations that were lower than the actual cash value that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

55.     State Farm intended to induce and coerce Plaintiffs and putative class members into settling their total loss claims for less than they would have if State Farm had complied with Arkansas law and obtained a

quotation from a qualified dealer or appraiser located in the local market area.

56.    Plaintiffs and putative class members justifiably relied on State Farm's representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

57.    State Farm's conduct proximately caused damages. Plaintiffs and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

58.    State Farm knew or ought to have known that its conduct would result in injury to Plaintiffs and putative class members and it continued in such conduct in reckless disregard of the consequences. Specifically, State Farm knew that its use of the AudaExplore Report undervalued its insureds' vehicles, yet it continued to use the AudaExplore Report because it saved

State Farm millions of dollars each year. As a result, Plaintiffs and putative class members are entitled to punitive damages.

### COUNT III: BAD FAITH

59.     Plaintiffs incorporates by reference the preceding paragraphs as if they were fully set forth herein.

60.     State Farm acted in bad faith to avoid liability under its policy issued to Plaintiffs. State Farm knew that its method of settling total loss claims violated Arkansas law and would result in a lower payment to Plaintiffs than if State Farm would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, State Farm fraudulently presented the AudaExplore Report to Plaintiffs as representing the actual cash value of her vehicle.

61.     State Farm did more than merely refuse to pay a claim. State Farm intentionally violated Arkansas law to save itself money at the expense of its insured. State Farm's conduct was dishonest and oppressive and was carried out with a state of mind characterized by contempt for its insureds.

62.     State Farm's conduct proximately caused damages. Plaintiffs and putative class members suffered damages in an amount equal to the

difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

63.     State Farm knew or ought to have known that its conduct would result in injury to Plaintiffs and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiffs and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

64.     Plaintiffs incorporates by reference the preceding paragraphs as if they were fully set forth herein.

65.     Plaintiffs and State Farm entered into a contract. Among other things, the policies provide for the adjustment and settlement of total losses based on "actual cash value" of the vehicle.

66.     Arkansas law requires that State Farm either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2)(A). If the insurer deviates from this

method, it must provide documentation for the deviation, including giving particulars of the automobile's condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

67. Plaintiffs and putative class members did what the contract required of them.

68. State Farm breached the contracts by using the AudaExplore Report instead of using the methods required by Arkansas law.

69. As a result of State Farm's breach of contract, Plaintiffs and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. JURY DEMAND & PRAYER FOR RELIEF

70.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

71.     Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . . ." Plaintiffs demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

72.     WHEREFORE, Plaintiffs respectfully requests this Court:

a.      Certify a class defined as:

> All individuals insured by State Farm under a policy issued or effective in Arkansas who: (a) had a total loss claim with State Farm; (b) that received a settlement calculated using AudaExplore Report; (c) during the period from July 18, 2014 to the present.

b.      Appoint Marsha Moffitt, Dennis Bradford, Emily Butler, and Martin Davis as class representative;

c.      Appoint Holleman & Associates, P.A. and Brad Hendricks Law Firm as class counsel;

d.      Declare that State Farm's practice of using the AudaExplore Report to adjust total loss claims violates Arkansas law;

e.      Enjoin State Farm from using the AudaExplore Report to adjust future total loss claims in the state of Arkansas;

f.      Award Plaintiffs compensatory damages in an amount equal to the difference between the actual cash value of their vehicles and the amount State Farm paid;

g.      Award them punitive damages in an amount sufficient to punish State Farm for its wrongdoing and to deter others from engaging in similar wrongdoing;

h.      Award Plaintiffs all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.      Grant Plaintiffs all such further relief deemed just and appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By:

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444